UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

MALINDA A. CARLSON et al.,

                Plaintiffs,

       v.

RAYMOUR AND FLANIGAN FURNITURE
   COMPANY et al.,

                Defendants.

**DECISION AND ORDER**
10-CV-455A

## I.    INTRODUCTION

On June 2, 2010, plaintiffs Malinda A. Carlson and Philip A. Wolf filed a complaint against defendants Raymour and Flanigan Furniture Company and Raymours Furniture Company, Inc. ("Raymour" collectively). The complaint contained four claims. In the first claim, plaintiffs accused Raymour of violating the federal Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601–1667f, by failing to disclose that they negotiate final furniture prices to lower amounts for cash purchases than credit purchases. In the second claim, plaintiffs accused Raymour of violating state-level consumer-protection laws in the seven states where it does business. In the third claim, plaintiffs accused Raymour of common-law unjust enrichment. In the fourth claim, plaintiffs requested a permanent injunction prohibiting Raymour from engaging in deceptive business

practices. In response to plaintiffs' complaint, Raymour filed a motion on August 2, 2010 to compel arbitration and to stay litigation pending the outcome of arbitration.

Plaintiffs' complaint and Raymour's motion prompted the Court to review its jurisdiction over the case. In a Decision and Order dated March 24, 2011, the Court found a review of jurisdiction necessary because it saw

> a serious tension running through plaintiffs' complaint and opposition papers. On the one hand, plaintiffs have invoked the TILA, a statute written to address the congressional finding "that economic stabilization would be enhanced and the competition among *the various financial institutions and other firms engaged in the extension of consumer credit* would be strengthened by the informed use of credit." 15 U.S.C. § 1601(a) (emphasis added). Accordingly, the entire purpose of the TILA is "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices." *Id.* The TILA thus was written with *lenders* in mind, to require them to help consumers understand that buying on credit is a serious responsibility that requires careful consideration of the interest rates, fees, and other conditions involved. Invoking the TILA, therefore, implies some kind of liability on the part of Wells Fargo, the only lender in this case. On the other hand, however, plaintiffs have denied emphatically that Wells Fargo has any knowledge of defendants' conduct and has anything at all to do with this case. Plaintiffs' decision to cite to the unfair-trade prohibitions in every state where defendants do business underscores that this case has to do with false advertising and disclosure of negotiation tactics, not with lending and credit in themselves. The side effect of plaintiffs' emphasis on state-level claims for unfair trade, however, is that they have placed in doubt whether they have a federal claim at all.

(Dkt. No. 31 at 11–12, *available at* 2011 WL 1454068.) The Court's review focused on whether plaintiffs could categorize Raymour as a "creditor" under a

portion of 15 U.S.C. § 1602(f) that states that "in the case of an open-end credit plan involving a credit card, the card issuer and any person who honors the credit card and offers a discount which is a finance charge are creditors." The Court found that Raymour's process of negotiating from listed prices to final prices mostly closely fit the conduct described in TILA regulations as "[d]iscounts offered to induce payment for a purchase by cash, check, or other means," 12 C.F.R. § 226.4(c)(8), which is conduct that explicitly does *not* constitute a "finance charge" under the TILA. Without any conduct that qualified as a finance charge, the Court decided that Raymour was not a creditor under the TILA and that it lacked jurisdiction over plaintiffs' claims. The Court dismissed the complaint accordingly, without deciding Raymour's motion on the merits and without commenting on what the merits of plaintiffs' claims might be in state court.

On April 13, 2011, plaintiffs filed a motion for reconsideration of the Court's dismissal of their complaint. Plaintiffs have submitted a new affidavit and a new legal argument asserting that the credit card that they used for their furniture purchase is an "open-end credit plan" under the TILA, even though the Court assumed so for purposes of its review of jurisdiction. Plaintiffs also have cited 15 U.S.C. § 1666f(b)[1] and 12 C.F.R. § 226.2(a)(17)(ii)[2] to argue that, in

---

[1] "With respect to any sales transaction, any discount from the regular price offered by the seller for the purpose of inducing payment by cash, checks,

spite of 12 C.F.R. § 226.4(c)(8), Raymour's price negotiations constitute a finance charge—and thus make Raymour a creditor under the TILA—because they are not offered to all prospective buyers and are not disclosed clearly and conspicuously.  Raymour opposes reconsideration because its price negotiations do not qualify as a "regular price" as defined in Section 1666f(b).

The Court has deemed the motion for reconsideration submitted on papers pursuant to Rule 78(b) of the Federal Rules of Civil Procedure ("FRCP"). For the reasons below, the Court denies the motion.

## II.   DISCUSSION

### A.   *FRCP 60(b) and Reconsideration Generally*

Plaintiffs have asserted that the Court "may have overlooked" 15 U.S.C. § 1666f(b) and have attempted to direct the Court's attention away from 12 C.F.R. § 226.4(c)(8).  Framed that way, the pending motion best falls under FRCP 60(b).  "On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for . . . mistake, inadvertence, surprise, or excusable neglect . . . or any other reason that justifies

---

or other means not involving the use of an open-end credit plan or a credit card shall not constitute a finance charge as determined under section 1605 of this title if such discount is offered to all prospective buyers and its availability is disclosed clearly and conspicuously."  15 U.S.C. § 1666f(b).

[2] "Creditor means: . . . [f]or purposes of §§ 226.4(c)(8) (Discounts), 226.9(d) (Finance charge imposed at time of transaction), and 226.12(e) (Prompt notification of returns and crediting of refunds), a person that honors a credit card."  12 C.F.R. § 226.2(a)(17)(ii).

relief." FRCP 60(b)(1, 6). "The standard for granting such a motion is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.* 70 F.3d 255, 257 (2d Cir. 1995) (citation omitted). Relief under FRCP 60(b) is discretionary. *See Motorola Credit Corp. v. Uzan*, 561 F.3d 123, 126 (2d Cir. 2009) ("Rule 60(b) provides a mechanism for extraordinary judicial relief [available] only if the moving party demonstrates exceptional circumstances, and relief under the rule is discretionary.") (alteration in the original) (internal quotation marks and citations omitted).

### B.   *Finance Charges Under the TILA*

Plaintiffs have not presented any overlooked factual information that bears on the Court's conclusion that Raymour is not a creditor under the TILA because none of its alleged conduct fits the TILA's definition of a finance charge. That said, plaintiffs have presented an allegedly overlooked legal argument that, by way of 15 U.S.C. § 1666f(b), Raymour did in fact assess plaintiffs a finance charge. Plaintiffs' motion thus reduces to a re-examination of what a "finance charge" is under the TILA.

The definition of "finance charge" under the TILA is straightforward. "[T]he amount of the finance charge in connection with any consumer credit transaction shall be determined as the sum of all charges, payable directly or indirectly by

5

the person to whom the credit is extended, and imposed directly or indirectly by the creditor as an incident to the extension of credit.  The finance charge does not include charges of a type payable in a comparable cash transaction." 15 U.S.C. § 1605(a).  The regulations associated with the TILA contain a similar definition.  "The finance charge is the cost of consumer credit as a dollar amount.  It includes any charge payable directly or indirectly by the consumer and imposed directly or indirectly by the creditor as an incident to or a condition of the extension of credit.  It does not include any charge of a type payable in a comparable cash transaction." 12 C.F.R. § 226.4(a).  The finance charge that a lender assesses in a consumer credit transaction must be a charge distinct from the actual price of the item in question.  "For both creditor and consumer, determining the accurate cost of credit for TIL purposes involves breaking down the components of the total obligation into two basic classifications: the amount financed and the finance charge.  The amount financed is comprised of those legitimate components of the obligation which are advanced by the lender directly to the borrower or paid to others on the borrower's behalf; the finance charge is the cost of the credit, as the explanatory phrases on a disclosure statement indicate.  *The two categories are mutually exclusive.*" 1-1 Nat'l Consumer Law Ctr., *Consumer Credit Law Manual* § 1.04 (2010) (emphasis in original).

The TILA's definition of "finance charge" presents several problems for plaintiffs. First, Wells Fargo is the only lender in this case, and it did not impose any charges "as an incident to the extension of credit" on plaintiffs. Second, plaintiffs have not presented any overlooked information about charges that are distinct from any final price that Raymour sets for a piece of furniture. Everything that plaintiffs have claimed about their furniture purchase relates to negotiations over price—more specifically, negotiations over how much to lower the price listed on the tag accompanying any given item. (*See* Dkt. No. 35 at 8 ("THE COURT: So you go into the store. There's a price tag on the piece of furniture; is that right?  MR. SZANYI: Correct . . . . That number, much like the example you gave me with the car, is a starting point for the negotiation.")). If anything, the result of these negotiations would be the "amount financed" and not any separate "charge." Third, haggling with Raymour over how much to drop the tag price occurs in every sale with every consumer, meaning that this haggling occurs "in a comparable cash transaction."

Finally, haggling over price in every sale means that there is no "regular price" as contemplated by the TILA. Plaintiffs' use of 15 U.S.C. § 1666f(b) assumes the existence of a "regular price" that is "discounted." However, "[a]s used in this section and section 1666f of this title, the term 'regular price' means the tag or posted price charged for the property or service if a single price is tagged or posted . . . ." 15 U.S.C. § 1602(x). Further, "[t]he term 'discount' as

7

used in section 1666f of this title means a reduction made from the regular price." 15 U.S.C. § 1602(q).  As plaintiffs themselves have stated, Raymour places tag prices on its goods, but never makes that tag price the final price.  Final prices likely vary for any number of reasons, but what matters is that they always vary and are always less than the tag price, not more.

Under these circumstances, plaintiffs cannot avail themselves of Section 1666f(b) to alter the Court's prior Decision and Order.  To the extent that some sort of "discount" exists here, even if not a discount from a regular price, 12 C.F.R. § 226.4(c)(8) would exclude that discount from being a finance charge, as described in the Court's prior Decision and Order.

## III.   CONCLUSION

For all of the foregoing reasons, the Court's denies plaintiffs' motion for reconsideration (Dkt. No. 33).

SO ORDERED.

*s/ Richard J. Arcara*
HONORABLE RICHARD J. ARCARA
UNITED STATES DISTRICT JUDGE

DATED: May 9, 2011